UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

SAMUEL KERCELIN,
Petitioner,
v.
CHRISTOPHER LAROSE, et al.,
Respondents.

Case No.: 26cv5535-LL-BJW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Samuel Kercelin's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. Respondents filed a Response [ECF No. 4] and Petitioner filed a Traverse [ECF No. 5]. For the reasons set forth below, the Court **GRANTS** the Petition and **ORDERS** an immediate release.

## I. BACKGROUND

Petitioner is a native and citizen of Haiti. Pet. ¶ 2. On June 25, 2022, Petitioner presented himself at the Hidalgo Port of Entry in Hidalgo, Texas, where he was processed and paroled into the United States. *Id*. ¶ 26; Ex. 1, ECF No. 1-2. On the same day, the Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner, but the immigration judge terminated those proceedings on February 7, 2023. Ex. 2, ECF No. 1-3; Ex. 3, ECF No. 1-4. On October 3, 2023, the U.S. Citizenship and

Immigration Services ("USCIS") approved Petitioner's application for Temporary Protected Status. Ex. 4, ECF No. 1-5. Petitioner also applied for asylum before USCIS and received employment authorization that is valid from October 9, 2024 through October 8, 2029. Ex. 5, ECF No. 1-6.

On September 24, 2026, masked ICE officers operating unmarked vehicle arrested Petitioner in front of his apartment complex in San Diego, California. Pet. ¶ 34. Petitioner has been detained at Otay Mesa Detention Center since then. *Id*. ¶ 35.

On September 25, 2026, Petitioner filed the instant Petition alleging Respondents violated the Fifth Amendment's Due Process Clause and the Administrative Procedures Act ("APA"). Pet. ¶¶ 52–66. Specifically, Petitioner claims that Respondents provided no written notice or meaningful opportunity to be heard before taking him into custody. *Id*. ¶ 35.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)).

## III. DISCUSSION

Petitioner argues that his detention without notice or hearing violates the Fifth Amendment's Due Process Clause and the APA. Pet. ¶¶ 52–66. Respondents concede that "Petitioner was previously released from immigration custody on parole" and that they "have insufficient information regarding termination of the parole." Ret. at 2. Because the

Court finds that Petitioner's Fifth Amendment claim is meritorious and justifies Petitioner's release, the Court will only address this claim in this Order.[1]

The Due Process Clause of the Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is well established that due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

"[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). In fact, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original). An initial release from ICE custody further reflects "a determination by the government that [an individual is] neither a flight risk nor a danger to the community." *Pinchi*, 792 F. Supp. 3d at 1034. Thus, ICE may not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros v. Kaiser*, No. 25-CV-

---

[1] Because the Petition can be resolved on due process grounds, the Court declines to reach Petitioner's claims of APA violation. However, the Court notes that other courts have found violations of the APA in similar circumstances. *See, e.g.*, *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1156 (S.D. Cal. 2025) ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA."); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding revocation of the petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation).

06924-EMC (EMC), 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021)).

Here, Petitioner was previously released from immigration custody on parole in 2022 (Pet. ¶ 26; Ret. 2) and thus held a protected liberty interest in remaining out of custody. Accordingly, the Due Process Clause required procedural protections before he could be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that revocation of Petitioner's parole without notice or an opportunity to be heard violated Petitioner's due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for the revocation or giving him an opportunity to be heard. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H.*

*v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* After initially finding that Petitioner was neither a flight risk nor a danger to the community, Respondents have not produced any valid argument or evidence that these findings have changed. Respondents, however, has noted for the Court that Petitioner has a criminal history and submitted Form I-213 that states Petitioner was arrested on September 30, 2024 for "threaten[ing] crime with intent to terrorize." Ret. 3; Ex. 1, ECF No. 4-1 at 4. As Respondents note, Form I-213 also states that Petitioner was released from custody the following day on October 1, 2024. Ret. 3; Ex. 1, ECF No. 4-1 at 4. Respondents also add that Respondents' counsel has "no further information regarding the arrest." Ret. at 3.

In other words, Respondents do not expressly argue that Petitioner's September 2024 arrest constitutes a sufficient change in circumstance to justify Petitioner's re-detention without notice or hearing. *See generally* Ret. Any such argument would be unsuccessful regardless. *See e.g.*, *Gutierrez-Paniagua v. Mullin*, No. 26-CV-2512-GPC-JLB, 2026 WL 1747297, at *4 (S.D. Cal. June 17, 2026) (finding re-detention without notice or hearing violated due process where petitioner was arrested but not charged for theft and burglary); *Vargas Monsalve v. Chestnut*, No. 1:26-CV-00626-DAD-CKD, 2026 WL 242066, at *2 (E.D. Cal. Jan. 29, 2026) (finding due process violation and granting immediate release where "respondents provide[d] no legal authority in support of the proposition that petitioner's DUI arrest justifies re-detaining him without prior notice or a pre-detention hearing."). Thus, Petitioner's arrest does not alter the *Mathews* analysis when considering whether Petitioner's re-detention without notice or a hearing violated Petitioner's protected liberty interest.

Moreover, Respondents also do not claim that Petitioner failed to abide by the conditions of his release. Thus, the risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation

omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO (HC), 2025 WL 2817795, at *6 (E.D. Cal. Oct. 3, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025))).

Therefore, because Respondents detained Petitioner by revoking his release without notice or a pre-deprivation hearing in violation of the Due Process Clause, Petitioner's detention is unlawful. *See, e.g.*, *Sanchez v. LaRose*, 2025 WL 2770629, at *4 (granting a writ of habeas corpus and releasing petitioner from custody after finding the petitioner's parole was revoked without notice and a hearing, thereby violating her due process rights and rendering her detention unlawful).

As has been found in countless similar cases in this district, the appropriate remedy in such case is Petitioner's immediate release subject only to the conditions of his preexisting parole. *See Noori v. LaRose*, 807 F. Supp. 3d at 1163–66 (S.D. Cal. 2025) (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing). Accordingly, the Court **GRANTS** Petitioner's Petition.

/ / /

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus and **ORDERS** that Respondents to immediately release Petitioner from custody subject only to the conditions of his preexisting parole. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: October 6, 2026

Honorable Linda Lopez
United States District Judge